_____

No. 12-1437
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
_____

**RAYMOND WOOLLARD,** *et al.***,**

*Plaintiffs-Appellees,*

**v.**

**DENIS GALLAGHER,** *et al.***,**

*Defendants-Appellants.*
_____

On Appeal from the United States District Court
for the District of Maryland
(Benson E. Legg, District Judge)
_____

**MOTION FOR STAY PENDING APPEAL**
_____

DOUGLAS F. GANSLER
Attorney General of Maryland

DAN FRIEDMAN
Assistant Attorney General
Office of the Attorney General
Legislative Services Building
90 State Circle
Annapolis, Maryland 21401
Tel. 410-946-5600

July 27, 2012

MATTHEW J. FADER
STEPHEN M. RUCKMAN
Assistant Attorneys General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
Tel. 410-576-7906

Attorneys for Defendants-Appellants

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

PROCEDURAL BACKGROUND..........................................................................4

STATEMENT OF FACTS ....................................................................................6

ARGUMENT ........................................................................................................8

I.  A STAY SHOULD BE GRANTED BECAUSE DEFENDANTS ARE LIKELY TO
    SUCCEED ON THE MERITS, WILL SUFFER IRREPARABLE HARM IN THE
    ABSENCE OF A STAY, AND THE BALANCE OF EQUITIES AND PUBLIC
    INTEREST FAVOR ENTRY OF A STAY ..............................................................8

II. DEFENDANTS HAVE A STRONG LIKELIHOOD OF SUCCESS ON THE
    MERITS ........................................................................................................8

    A.  The Second Amendment Guarantees an Individual Right for
        Law-Abiding Citizens to Keep and Bear Arms for Self-Defense
        in the Home, Subject to Exceptions ....................................................9

    B.  The Permit Statute Does Not Burden Conduct Protected by the
        Second Amendment ...........................................................................11

        1.  The Public Carry of Firearms Has Long Been Subject to
            Regulation ..................................................................................12

        2.  Heller Did Not Recognize a General Right to Carry Arms
            in Public ....................................................................................16

    C.  Even if the Permit Statute Burdened Conduct Protected by the
        Second Amendment, It Would Satisfy the Applicable Level of
        Scrutiny ............................................................................................17

        1.  The Permit Statute Is Subject to No Greater than
            Intermediate Scrutiny ...............................................................17

        2.  The Permit Statute Satisfies Intermediate Scrutiny ................18

        3.  Other Courts Have Upheld Similar, and More Restrictive,
            Permit Statutes Under Intermediate Scrutiny .........................23

i

III.   THE LIKELIHOOD OF IRREPARABLE HARM IN THE ABSENCE OF A STAY FAVORS GRANTING A STAY ............................................................................24

IV.    CONSIDERATION OF POTENTIAL INJURY TO OTHER PARTIES FAVORS GRANTING A STAY ............................................................................28

V.     THE PUBLIC INTEREST FAVORS GRANTING A STAY ........................................29

CONCLUSION ....................................................................................................30

# TABLE OF AUTHORITIES

## Cases

Page

*Andrews v. State*, 50 Tenn. 165 (1871) ................................................. 15

*Bateman v. Perdue*, No. 5:10-cv-265-H, 2012 U.S. Dist. LEXIS 47336
(E.D.N.C. Mar. 29, 2012) ........................................................... 11

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................. *passim*

*English v. State*, 35 Tex. 473 (1871) ...................................................... 15

*Fife v. State*, 31 Ark. 455 (1876) ............................................................ 15

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ............................................. 25

*Hightower v. City of Boston*, 822 F. Supp. 2d 38 (D. Mass. 2011) ........................ 23

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ............................................... 8

*Kachalsky v. Cacace*, 817 F. Supp. 2d 235 (S.D.N.Y. 2011) ........................ 11, 23

*Kansas v. Hendricks*, 521 U.S. 346 (1997) ............................................. 26

*Kuck v. Danaher*, 822 F. Supp. 2d 109 (D. Conn. 2011) ...................................... 23

*Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970) ............................................ 8, 24

*McDonald v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 3020 (2010) ............. 3, 23

*Moore v. Madigan*, No. 11-cv-02134, 2012 U.S. Dist. LEXIS 12967 (C.D.
Ill. Feb. 3, 2012) ......................................................................... 10

*New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345
(1977) ........................................................................................ 26

*Nunn v. State*, 1 Ga. 243 (1846) ............................................................. 15

*Piszczatoski v. Filko*, Civ. No. 10-06110, 2012 U.S. Dist. LEXIS 4293 (D. N.J. Jan. 12, 2012) ...................................................... 11, 15, 23, 26

*State v. Duke*, 42 Tex. 455 (1874) ....................................................... 15

*State v. Reid*, 1 Ala. 612 (1840) .......................................................... 15

*State v. Workman*, 14 S.E. 9 (W. Va. 1891) ......................................... 15

*United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012) ...................... 11, 19, 22

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) ........................... 12, 18, 20

*United States v. Decastro*, No. 10-3773, 2012 U.S. App. LEXIS 11213 (2d Cir. June 1, 2012) .......................................................................... 11

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011) ........................ *passim*

*United States v. Moore*, 666 F.3d 313 (4th Cir. 2012) ......................... 11

*United States v. Salerno*, 481 U.S. 739 (1987) ...................................... 19

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ......................... 17

*United States v. Staten*, 666 F.3d 154 (4th Cir. 2011) .............................. 11, 18, 19

*United States v. Weaver*, Crim. A. No. 2:09-cr-00222, 2012 U.S. Dist. LEXIS 29613 (S.D.W.Va. Mar. 7, 2012) ......................................... 11

*Williams v. State*, 417 Md. 479 (2011) ................................................. 10

**United States Constitution, Statutes, and Rules**

United States Constitution, amendment II ...................................................... *passim*

Federal Rule of Appellate Procedure 8(A)(1) ....................................................... 1

Federal Rule of Appellate Procedure 8(A)(2)............................................ 1

Local Rule 8 ........................................................................................... 1

Local Rule 27(a)...................................................................................... 1

**Maryland Constitution and Statutes**

Annotated Code of Maryland

Criminal Law Article
§ 4-202 ........................................................................................... 19
§ 4-203 ........................................................................................ 2, 6
§ 4-203(a)......................................................................................... 6
§ 4-203(b) .............................................................................. 2, 6, 28
§ 4-203(b)(2)..................................................................................... 6
§ 4-203(b)(6)..................................................................................... 6

Public Safety Article
§§ 5-301-5-314 ............................................................................... 6
§§ 5-302-5-312 ............................................................................... 7
§ 5-306(a)(5)(ii) ................................................................... 2, 6, 20
§ 5-312(e)(1) ................................................................................... 7

State Government Article
§ 10-222.1 ...................................................................................... 7

**Historical Statutory References**

England
English Bill of Rights, 1 W. & M., c. 2, § 7, in 3 Eng. Stat. at Large 441
(1689)................................................................................... 12, 16

Statute of Northhampton, 2 Edw. III, c. 3 (1328).......................... 13, 15

West Virginia
1882 W. Va. Acts, ch. 135 ...................................................................... 17

**Miscellaneous Authorities**

3 Coke, Edward. *Institutes of the Laws of England*
(E. & R. Brooke 1797) .................................................................... 14

U.S. Dep't of Justice, Bureau of Justice Statistics, *Crime in the United States*
(2010), Table 20 ............................................................................. 20

Cornell, Saul. *A Well-Regulated Militia: The Founding Fathers and the
Origins of Gun Control in America* (2006) ................................. 14

Maryland Governor's Office of Crime Control & Prevention, *Maryland 2010
Crime Totals* ................................................................................ 20

ODMP, "Honoring All Fallen Members of the Baltimore City Police
Department" .................................................................................. 21

Officer Down Memorial Page, Inc. ("ODMP"), "Fallen Officers in
Maryland" .................................................................................... 20

Violence Policy Center, TOTAL PEOPLE KILLED BY CONCEALED HANDGUN
PERMIT HOLDERS (2012) ............................................................... 22

## INTRODUCTION[1]

The defendants-appellants ("Defendants") move, under Federal Rule of Appellate Procedure 8(a)(2), for an order granting an immediate stay of the district court's orders entered March 5, 2012 (the "March 5 Order") (J.A. 160)[2] and April 2, 2012 (the "April 2 Order") (J.A. 161). Pursuant to an order entered by the district court on July 24, 2012, if a stay is not granted, the district court's orders would prohibit the State of Maryland, effective August 7, 2012, from considering whether individuals have a "good and substantial reason" to wear and carry a loaded handgun in public when processing applications for permits to do so. A stay is necessary to preserve the status quo so that this Court can decide the

---

[1] Pursuant to Local Rule 27(a), counsel for Defendants informed counsel for Plaintiffs of their intent to file this motion. Counsel for Plaintiffs stated that Plaintiffs oppose the relief requested in this motion and intend to file a response in opposition. Also, pursuant to Federal Rule of Appellate Procedure 8(a)(1), Defendants originally sought a stay from the district court by motion filed March 7, 2012 (Supp. App. 166-86). On April 2, 2012, the district court entered a temporary stay. (J.A. 162.) In an order entered July 24, 2012, the district court: (1) denied the motion for stay; and (2) dissolved, effective August 7, 2012, the temporary stay. (Supp. App. 469.) In an accompanying opinion, the district court held that Defendants did not show a likelihood of irreparable injury or that a stay would serve the public interest, and further found that if a stay is not granted, "a sizeable number of people will be precluded from exercising . . . what this Court has recognized as a valid aspect of their Second Amendment right." (Supp. App. 461-68.)

[2] Citations to the record are made either to the Joint Appendix ("J.A."), which is reproduced as Exhibit A to this motion, or to Defendants' Supplemental Appendix in Support of Motion for Stay ("Supp. App."), which is reproduced as Exhibit B to this motion. These exhibits contain the materials required by Federal Rule of Appellate Procedure 8(a)(2)(B) and Local Rule 8.

important constitutional issues presented by this case, which are issues of first impression in this Circuit, before taking the extraordinary step of invalidating a 40-year-old requirement of State law that the Maryland General Assembly found "necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of the public."  Md. Code Ann., Crim Law ("CL") § 4-203(b).

The law challenged in this case does not in any way affect the core Second Amendment right identified by the Supreme Court and this Court.  Subject to the provisions of other laws not challenged here, Maryland does not require a permit to possess, wear, or carry a handgun in one's home, business, or on other property one owns, nor does it require a permit to wear, carry, or transport a handgun in connection with hunting, organized military activity, target shoots, target practice, a sport shooting event, or trapping, among other activities.  *See* CL § 4-203(b). Outside of these excepted locations and activities, Maryland generally requires a permit to wear and carry a handgun in public spaces.  CL § 4-203.  To qualify for a permit, an individual is required to have "good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger."  Md. Code Ann., Pub. Safety ("PS") § 5-306(a)(5)(ii).

This motion seeks a stay of the district court's orders declaring the good-and-substantial-reason requirement to be unconstitutional and permanently

enjoining Defendants from enforcing that requirement. This Court should stay those orders because all four factors required to be considered in connection with a stay application favor entering a stay. Defendants have a strong likelihood of success on the merits. Neither the Supreme Court's recent decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 3020 (2010), nor this Court's post-*Heller* decisions support Plaintiffs' effort to radically expand the Second Amendment right recognized in *Heller*. The Second Amendment does not secure an individual right to wear and carry, in public, easily-concealable and highly-lethal handguns, where the individual cannot demonstrate a reasonable self-defense or other justification for doing so, in circumstances not related to hunting, organized military activities, target shooting, sport shooting, or related activities. To the contrary, reasonable regulations of public carry of firearms like Maryland's have long existed and consistently been upheld. In fact, without exception, every other court to have decided the constitutionality of similar handgun wear-and-carry permit statutes post-*Heller* has upheld the constitutionality of the statutes.

Defendants will also suffer irreparable harm to their ability to protect public safety, an indisputably compelling government interest, in the absence of a stay. The Maryland General Assembly enacted the good-and-substantial-reason requirement to help protect the people of Maryland from the scourge of handgun

violence, and testimony in the record from Maryland law enforcement officers, along with other evidence, demonstrates the ongoing importance of that requirement in protecting public safety. As this Court has previously explained, "[t]his is serious business. We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights." *United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011).

In contrast to the irreparable harm facing Defendants in the absence of a stay, entering a stay would neither interfere with a core constitutional right nor prevent citizens from keeping and bearing multiple types of firearms for self-defense either inside or outside the home. The public interest also favors a stay that will allow this Court to address the significant constitutional issues of first impression presented in this case before invalidating, without this Court's full consideration, the longstanding requirement of Maryland law that an individual wishing to wear and carry a loaded handgun in crowded public spaces demonstrate that he or she has a good and substantial reason to do so.

## PROCEDURAL BACKGROUND

Plaintiffs Raymond Woollard and the Second Amendment Foundation filed this action on July 29, 2010. (J.A. 3.) The March 5 Order granted Plaintiffs' motion for summary judgment and denied Defendants' cross-motion for summary

judgment. (J.A. 160.) In a memorandum opinion accompanying the March 5 Order, the district court held that the Permit Statute's good-and-substantial-reason requirement "is insufficiently tailored to" the State's interest in public safety and crime prevention and, therefore, violates the Second Amendment. (J.A. 159.) The April 2 Order awarded injunctive relief permanently prohibiting Defendants from enforcing the good-and-substantial-reason requirement. (J.A. 161-63.)

On March 7, 2012, Defendants moved for a stay pending appeal. (Supp. App. 166-86.) In the April 2 Order, the district court directed the parties to file additional briefing on Defendants' motion for a stay and granted a temporary stay while it considered that motion. (J.A. 162.) In an order entered July 24, 2012,[3] the district court denied Defendants' motion for stay pending appeal and dissolved, effective August 7, 2012, the temporary stay. (Supp. App. 469.)

While the district court held Defendants' motion for stay pending appeal, merits briefing proceeded in this Court. Defendants filed their opening brief on June 15, 2012, and a corrected opening brief on June 21, 2012.[4] (Doc Nos. 20, 23.) Four *amici* supporting reversal of the district court filed briefs on June 22, 2012. (Doc Nos. 26, 34, 35, 38.) On July 5, 2012, Plaintiffs, with Defendants'

---

[3] The July 24 Order is dated July 23, 2012, but was entered on July 24, 2012.

[4] In this motion, Defendants present an abbreviated version of the statement of facts and argument on the merits contained in their opening brief (Doc No. 23).

consent, sought and received an extension of time to file their response brief until July 30, 2012. Defendants' reply brief is currently due August 22, 2012.

## STATEMENT OF FACTS

Under Maryland law, unless otherwise restricted, individuals qualified to own a firearm are allowed, without a permit, to possess, wear, carry, and transport a handgun within their home, business, or any property they own. CL § 4-203(b)(6).[5] Where otherwise permitted, individuals also generally do not need a permit to wear, carry, or transport a handgun in public in connection with, among other activities, hunting, trapping, a target shoot, target practice, a sport shooting event, an organized military activity, or the moving of a gun collection. CL § 4-203(b). Aside from these and other exempted activities, Maryland law generally requires a permit to wear and carry a handgun in public. CL § 4-203(a), (b)(2).

The only aspect of Maryland's Permit Statute at issue in this lawsuit is the requirement that an applicant be found to have "good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger." PS § 5-306(a)(5)(ii). Permit applications are processed by the Handgun Permit Unit of the Maryland State Police ("MSP"), which has identified four non-exclusive categories of "good

---

[5] The criminal and permit statutes relevant to this case apply only to handguns, *see* CL § 4-203; PS §§ 5-301—5-314, not to other firearms such as rifles and shotguns.

and substantial reason," one of which is "personal protection." (J.A. 56, 58-59.) In assessing an application based on a need for "personal protection," MSP's Handgun Permit Unit follows guidance from Maryland's appellate courts as well as internal guidelines. (J.A. 59-61.) A good and substantial reason must "reflect more than 'personal anxiety' and evidence a level of threat beyond that faced by the average citizen." (J.A. 59-60.) If a threat is especially urgent, MSP's Handgun Permit Unit can make permits available on a same-day basis. (J.A. 60-61.)

If a permit application is denied, the applicant may appeal to the Handgun Permit Review Board, which reviews documentation submitted by the MSP and the applicant and takes testimony from witnesses. *See* PS §§ 5-302—5-312. An applicant aggrieved by a decision of the Board can appeal to a State circuit court, and thereafter to the State's appellate courts. *See* PS § 5-312(e)(1); Md. Code Ann., State Gov't § 10-222.1.

The only individual plaintiff in this case, Mr. Woollard, originally sought a Permit after a confrontation in which his unarmed son-in-law broke into Mr. Woollard's house in late 2002. (J.A. 14-15, 19.) During the incident, Mr. Woollard's son-in-law gained control of a shotgun Mr. Woollard introduced into the confrontation, although the son-in-law did not threaten to shoot anyone with that shotgun other than the son-in-law himself. (J.A. 19, 65.) In 2003, Mr. Woollard received a Permit to wear and carry a handgun in public (he already had

a right to wear and carry a handgun in his home), and that Permit was renewed in 2006. MSP denied Mr. Woollard a second renewal in 2009 when Mr. Woollard failed to present any evidence of a continuing threat. (J.A. 14-15, 20.)

## ARGUMENT

I.  **A STAY SHOULD BE GRANTED BECAUSE DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS, WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A STAY, AND THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR ENTRY OF A STAY.**

The factors governing a request for stay pending appeal are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). Each of these factors favors granting a stay pending appeal.

II.  **DEFENDANTS HAVE A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS.**

The issue in this case is whether the individual right to keep and bear arms protected by the Second Amendment secures a *right* to wear and carry, in public, easily-concealable, highly-lethal handguns, in circumstances not related to hunting, organized military activities, target shooting, sport shooting, or related activities, where the individual cannot demonstrate a reasonable self-defense or other

8

justification for doing so.  As discussed below, and more fully in Defendants'
opening brief (Doc No. 23), the Second Amendment right identified by the
Supreme Court in *Heller* does not include any such right.

>    **A.    The Second Amendment Guarantees an Individual Right
>    for Law-Abiding Citizens to Keep and Bear Arms for Self-
>    Defense in the Home, Subject to Exceptions.**

The Second Amendment states:  "A well regulated Militia, being necessary
to the security of a free State, the right of the people to keep and bear Arms, shall
not be infringed."  U.S. Const. amend. II.  In *Heller*, the Supreme Court reviewed a
law imposing a "complete prohibition" on the possession of handguns in the home,
"where the need for defense of self, family, and property is most acute."  554 U.S.
at 629.  The Court concluded that:  (1) the right codified by the Amendment was a
pre-existing right,  *id.*  at  592;  (2) this  right  is  an  individual  right,  *id.*;  and
(3) "whatever else [the Second Amendment] leaves to future evaluation, it surely
elevates above all other interests the right of law-abiding, responsible citizens to
use arms in defense of hearth and home," *id.* at 635.

Although the Supreme Court has declined to speculate about other conduct
that might fall within the scope of the Second Amendment, *Heller*, 554 U.S. at
629, the Court observed that, notwithstanding the Amendment's unconditional
language, "the right was not a right to keep and carry any weapon whatsoever in
any manner whatsoever and for whatever purpose."  *Id.* at 626.  Indeed, the Court

identified, by way of example, a number of types of laws restricting—or even denying—the keeping and bearing of arms that it presumed would remain lawful under its interpretation of the Amendment, including noting that a majority of nineteenth-century courts had upheld the constitutionality of complete prohibitions on the carry of concealed weapons. *Id.* at 626 & n.26.

The "core" Second Amendment right identified in *Heller* is the "clearly-defined fundamental right to possess firearms for self-defense *within* the home." *United States v. Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011) (emphasis added). Outside of this core right, there is a "considerable degree of uncertainty . . . as to the scope of [the Second Amendment] right." *Id.* This Court has thus far expressly declined to resolve that uncertainty, explaining that "[t]here simply is no need in this litigation to break ground that our superiors have not tread. To the degree that we push the right beyond what the Supreme Court in *Heller* declared to be its origin, we circumscribe the scope of popular governance, move the action into court, and encourage litigation in contexts we cannot foresee." *Masciandaro*, 638 F.3d at 475-76.[6]

---

[6] This Court is hardly unique in taking this approach to attempts to expand the reach of the Second Amendment right beyond that recognized in *Heller*. The vast majority of other courts that have addressed whether the individual Second Amendment right extends outside the home, in any form, either have held that it does not, *see, e.g.*, *Moore v. Madigan*, No. 11-cv-03134, 2012 U.S. Dist. LEXIS 12967, at *14-*22 (C.D. Ill. Feb. 3, 2012); *Williams v. State*, 417 Md. 479, 496 (2011); have declined to resolve the issue while expressing significant doubt about

**B.    The Permit Statute Does Not Burden Conduct Protected by the Second Amendment.**

In *United States v. Chester*, this Court adopted a two-pronged approach to Second Amendment challenges.  *See* 628 F.3d 673, 680 (4th Cir. 2010).  The first question is "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee."  *Id.* (internal quotation marks omitted).  If not, the challenged law is valid.  If the burdened conduct is found to be within the scope of the Amendment, the second prong requires the reviewing court to apply "an appropriate form of means-end scrutiny."  *Id.*

The threshold Second Amendment inquiry is whether Maryland's Permit Statute "imposes a burden on conduct falling within the scope of the Second Amendment's guarantee as historically understood."  *United States v. Chapman*,

---

whether the Second Amendment right extends outside the home, *see, e.g.*, *Piszczatoski v. Filko*, 840 F. Supp. 2d 813, Civ. No. 10-06110, 2012 U.S. Dist. LEXIS 4293, at *14-*48 (D.N.J. Jan. 12, 2012); *Kachalsky v. Cacace*, 817 F. Supp. 2d 235, 264-66 (S.D.N.Y. 2011); or have declined to address the issue at all, *see, e.g.*, *United States v. Decastro*, 682 F.3d 160, ___, 2012 U.S. App. LEXIS 11213, *11-*12 n.3 (2d Cir. June 1, 2012).  To date, other than the court below, only two other federal district courts have concluded that the individual Second Amendment right identified by the Supreme Court in *Heller* extends outside the home to *any* extent.  *See Bateman v. Perdue*, No. 5:10-CV-265-H, 2012 U.S. Dist. LEXIS 47336, at *10-*12 (E.D.N.C. Mar. 29, 2012); *United States v. Weaver*, Crim. A. No. 2:09-cr-00222, 2012 U.S. Dist. LEXIS 29613, at *11-*13 (S.D. W. Va. Mar. 7, 2012).  Both courts did so largely based on the reasoning of that portion of Judge Niemeyer's opinion in *Masciandaro* that the remainder of the panel did not join.  Notably, however, as discussed further in Defendants' opening brief (Doc No. 23) at 31-36, Judge Niemeyer's conclusion that the Second Amendment right extends outside the home "in some form," even if accepted, does not implicate the scope of Maryland's Permit Statute.

666 F.3d 220, 225 (4th Cir. 2012) (citing *Chester*, 628 F.3d at 680). This threshold "scope" inquiry presents the need to identify with specificity the "conduct" regulated by the statute, which is: (1) the wear, carry, or transport (2) of handguns, which are easily-concealable, (3) in public, (4) in circumstances unconnected with hunting, organized military activities, target practice, and other exempted activities, and (5) without any demonstrable self-defense or other justification. The appropriate inquiry, therefore, is whether the Second Amendment protects *this specific* conduct. A review of historical sources establishes that the pre-existing right codified in the Second Amendment was always subject to regulation, and did not include a right to carry easily-concealable firearms in public without the ability to demonstrate a good and substantial reason to do so.

### 1. The Public Carry of Firearms Has Long Been Subject to Regulation.

The acknowledged predecessor to our Second Amendment, the 1689 English Bill of Rights, provides: "'That the subjects which are Protestants may have arms for their defense suitable to their conditions and as allowed by law.' 1 W. & M. c. 2, § 7, in 3 Eng. Stat. at Large 441 (1689)." *Heller* 554 U.S. at 593. This right, which came subject to the express caveat that it neither reached all arms nor offered protection against legislation by Parliament, was the foundation of the pre-existing right that was codified in the Second Amendment. *Id.*

As described in *Heller*, the pre-existing right was generally understood to protect a number of different uses of arms, none of which can properly be read to include the public carry of easily-concealed, highly-lethal handguns without a demonstrable self-defense or other justification:

- First, the pre-existing right protected "above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635.

- Second, the right to keep and bear arms secured and protected the ability to maintain an effective militia, the purpose for which the pre-existing right was codified. *Id.* at 598-99.

- Third, the right to keep and bear arms was a right to "resist tyranny" or to "oppose an oppressive military force if the constitutional order broke down." *Id.* at 598, 599.

- Fourth, some authorities also identified a right to keep and bear arms for hunting. *Id.* at 599.

The long history of significant restrictions on the public carry of firearms in the interest of public safety, including limits and bans on easily-concealable firearms, demonstrates that the pre-existing *right* was not generally understood to include an unqualified right to carry firearms in public, much less, as Plaintiffs insist, the right to carry easily-concealable, highly-lethal handguns in public without any justification beyond a general desire to have a handgun in case a subjectively-perceived need to brandish or fire the gun arises. Restrictions on the carry of arms in public date back to at least 1328. England's Statute of Northampton provided that, except while on the king's business, no man was

permitted to "go nor ride armed by night nor by day, in Fairs, Markets, nor in the presence of the Justices or other Ministers, nor in no part elsewhere, upon pain to forfeit their Armour to the King, and their Bodies to Prison at the King's pleasure." 2 Edw. 3, c. 3 (1328) (Eng.); *see also* 3 Edward Coke, *Institutes of the Laws of England* 160 (E. & R. Brooke 1797)).

The Statute of Northampton remained in place through the time of the Framers. American colonies and, subsequently, states adopted version of the Statute of Northhampton or other laws restricting the public carry of weapons, especially concealable weapons. *See* discussion in Defendants' opening brief (Doc No. 23) at 23-27; *see generally* Brief of *Amici Curiae* of Legal Historians in Support of Appellants and Reversal (Doc No. 34) at 4-25.

The early nineteenth century saw a proliferation of easily-concealable weapons, including handguns, which had become more common, more dangerous, and more of a threat to public safety. *See* Saul Cornell, *A Well-Regulated Militia: The Founding Fathers and the Origins of Gun Control in America* 138-41 (2006). State legislatures reacted, beginning in 1813, initially with laws generally banning the concealed carry of such weapons. *Id.* at 141.

As public safety concerns increased, a number of states enacted statutes generally banning the public carry of such weapons. For example, in 1882, West Virginia made it a misdemeanor to carry, openly or concealed, revolvers, pistols,

and other easily-concealable weapons, while providing an exception if an individual could show, *inter alia*, that at the time he was carrying he "had good cause to believe, and did believe, that he was in danger of death or great bodily harm at the hands of another person." 1882 W. Va. Acts, ch. 135. The West Virginia Supreme Court upheld that statute in *State v. Workman*, 14 S.E. 9, 12 (W. Va. 1891). Courts in other states upheld statutes that similarly prohibited the carry of concealable weapons, including handguns. *See, e.g.*, *Fife v. State*, 31 Ark. 455, 455 (1876); *State v. Duke*, 42 Tex. 455, 456 (1874); *English v. State*, 35 Tex. 473 (1871); *Andrews v. State*, 50 Tenn. 165, 171 (1871); *but see Nunn v. State*, 1 Ga. 243, 251 (1846); *State v. Reid*, 1 Ala. 612, 616-17 (1840).

With the rise of regulatory schemes, states began adopting statutes requiring permits to carry easily-concealable firearms in public. Regulatory regimes that authorized permits to be issued to wear and carry handguns, and that required a demonstration of "good cause," date back nearly a century. *See Piszczatoski*, 2012 U.S. Dist. LEXIS 4293, at *45-*48 (tracing adoption of need requirement in New Jersey law back to at least 1924 and "proper cause" requirement in New York law back to at least 1919). Maryland's own Permit Statute was enacted in 1972.

### 2. *Heller* Did Not Recognize a General Right to Carry Arms in Public.

Although some—most notably the court below and Judge Niemeyer in the portion of his opinion in *Masciandaro* that the rest of the panel did not join—have claimed support from isolated passages in the *Heller* opinion for the extension of Second Amendment rights outside the home, at least to some extent, the passages on which they rely do not support Plaintiffs' claims. For example, although the Supreme Court observed that the pre-existing right secured by the English Bill of Rights was understood to be "an individual right protecting against both public and private violence," 554 U.S. at 594, that passage refers to a distinction between *types* of violence, "public violence" (between citizens and an oppressive government) and "private violence" (clashes between private citizens), *id.* at 593-94, not *locations* of violence. Similarly, the statement that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation," *Heller*, 554 U.S. at 592, was made in connection with the Court's exploration of whether the Second Amendment secures an individual right, and says nothing about the types, circumstances, or locations of confrontations that might justify its invocation. *See* Defendants' opening brief (Doc No. 23) at 31-36.

Moreover, even if the *Heller* decision can properly be read to imply that the Second Amendment right extends, in some form, beyond the home—notwithstanding the Supreme Court's express statements about the limitations of

its analysis and its pointed decision to limit its holding to the home, *Heller*, 554 U.S. at 626, 635; *see Skoien*, 614 F.3d at 640 (language in *Heller* "warns readers not to treat *Heller* as containing broader holdings than the Court set out to establish")—that conclusion would not necessarily implicate the conduct reached by the Maryland Permit Statute.  A Second Amendment right extending, in some form, to self-defense outside the home does not imply a right to wear and carry in public a loaded, readily-concealable handgun simply because one subjectively believes it is theoretically possible he might encounter a situation in which it might prove advantageous to brandish or fire a handgun.

In sum, the Permit Statute does not burden any conduct protected by the Second Amendment right recognized in *Heller* and, therefore, Defendants have a substantial likelihood of success on the merits.

      **C.**      **Even if the Permit Statute Burdened Conduct Protected by the Second Amendment, It Would Satisfy the Applicable Level of Scrutiny.**

           **1.**      **The Permit Statute Is Subject to No Greater than Intermediate Scrutiny.**

In *Heller*, the Supreme Court declined to identify the appropriate level of scrutiny applicable to Second Amendment challenges.  *See* 554 U.S. at 628 n.27. In *Masciandaro*, this Court reviewed a challenge to the constitutionality of a federal ban on possession of a loaded firearm in a vehicle within a national park.

638 F.3d at 459-60. Finding that the "core *Heller* right" applies only within the home, this Court observed that, "as we move outside the home, firearm rights have always been more limited, *because public safety interests often outweigh individual interests in self-defense*." *Id.* at 470 (emphasis added). As a result, this Court applied intermediate scrutiny. *Id.* Because Maryland's Permit Statute also does not burden "core" Second Amendment conduct, it, too, is subject to no greater than intermediate scrutiny.

## 2. The Permit Statute Satisfies Intermediate Scrutiny.

Under intermediate scrutiny, "the government bears the burden of establishing a reasonable fit between [the challenged statute] and a substantial governmental objective." *United States v. Staten*, 666 F.3d 154, 161 (4th Cir. 2011) (quoting *Chester*, 628 F.3d at 683). Once the Court identifies a substantial governmental objective, the Court considers whether there is a "reasonable fit" between the challenged law and that objective. *Staten*, 666 F.3d at 162. The government is not required to prove that the challenged law "is the least intrusive means" of supporting its substantial government objective, "or that there be no burden whatsoever" on the challenger's alleged Second Amendment right. *Id.* "In other words, the fit needs to be reasonable; a perfect fit is not required." *Id.*

The purpose of Maryland's Permit Statute, including the good-and-substantial-reason requirement, is to serve the State's compelling interests in

18

protecting public safety and reducing handgun violence. *See United States v. Salerno*, 481 U.S. 739, 750, 755 (1987) ("the Government's general interest in preventing crime is compelling" and "the primary concern of every government" is "a concern for the safety and indeed the lives of its citizens"). This purpose is reflected in codified legislative findings passed along with the Permit Statute that find that: "additional regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of the public." CL § 4-202. This purpose is also reflected in the testimony of Maryland law enforcement officers contained in the record. (J.A. 109-10 (Bealefeld); 116-17 (Sheridan); 126-27 (Johnson).)[7]

To examine a statute's "reasonable fit" with a government interest, the Court must first determine its precise contours. *Chapman*, 666 F.3d at 227. The Permit Statute requires that an individual who wants (1) to wear, carry, or transport (2) a handgun (3) in public, (4) in circumstances that do not involve hunting, organized military activities, target shoots, target practice, sport shooting events, certain firearms and hunter safety classes, trapping, or the moving of a gun collection, (5) must be found to have a good and substantial reason for doing so, "such as a

---

[7] The record contains the testimony, by declaration, of: (1) Frederick H. Bealefeld, III, Commissioner of the Baltimore Police Department (J.A. 108-14); (2) Terrence B. Sheridan (now retired), Superintendent of the Maryland State Police (J.A. 115-25); and (3) James W. Johnson, Chief of the Baltimore County Police Department (J.A. 126-34).

finding that a permit is necessary as a reasonable precaution against apprehended danger." PS § 5-306(a)(5)(ii).

Under intermediate scrutiny, the government bears the burden of demonstrating that the challenged law bears a "reasonable fit" to the State's compelling interests. *Chester*, 628 F.3d at 683. Handguns, far more than any other type of firearm, play a major role in violence in Maryland. Although 2010, the latest year for which data are available, produced Maryland's lowest rates of overall violent crime and homicide since reporting began,[8] Maryland continues to suffer from a violent crime rate that is far too high, and its largest city, Baltimore, consistently ranks as one of the ten most violent cities in the country. (J.A. 109 (Bealefeld).) The firearm of choice for Maryland's criminals is the handgun. Of the 293 firearm murders committed in Maryland in 2010, 272—92.8%—were committed with handguns.[9] Of the State and local law enforcement officers killed by intentional gunfire from a firearm of known type since 1857, 78.75% of those statewide, and 85% in Baltimore City, were caused by a handgun.[10] Handguns are

---

[8] Maryland Governor's Office of Crime Control & Prevention, *Maryland 2010 Crime Totals*, *available at* http://www.goccp.maryland.gov/msac/crime-statistics.php (last visited June 15, 2012).

[9] U.S. Dep't of Justice, Bureau of Justice Statistics, *Crime in the United States* (2010), Table 20, *available at* http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2010/crime-in-the-u.s.-2010/tables/10tbl20.xls.

[10] Officer Down Memorial Page, Inc. ("ODMP"), "Fallen Officers in Maryland," http://www.odmp.org/search/browse?state=MD (last visited June 15, 2012) (63 of

the single greatest threat to the safety of Maryland law enforcement officers. (J.A. 110 (Bealefeld), 117 (Sheridan), 133 (Johnson).) More than just numbers, the impact of handgun violence on Maryland is devastating to the communities in which it occurs. (J.A. 109-10 (Bealefeld); 130-31, 133 (Johnson).)

The good-and-substantial-reason requirement advances the State's compelling interests in protecting public safety and reducing handgun violence in several ways. The requirement decreases the likelihood that basic confrontations will turn deadly. (J.A. 112 (Bealefeld); 132 (Johnson).) It also helps to decrease the availability of handguns to criminals and would-be criminals, many of whom are not lawfully permitted to obtain handguns and so obtain them via robbery or theft. (J.A. 73-74 (Cook);[11] 111 (Bealefeld); 119-20 (Sheridan).) Indeed, police officers are sometimes targets of robberies and burglaries precisely because they are known to keep guns. (J.A. 111 (Bealefeld); 120 (Sheridan); 123 (Johnson).)

The good-and-substantial-reason requirement also limits the likelihood that victims of violent crimes will be killed, as research has shown that the prevalence

80 law enforcement officers killed statewide by firearm of known type involved handgun); ODMP, "Honoring All Fallen Members of the Baltimore City Police Department," http://www.odmp.org/agency/214-baltimore-city-police-department-maryland (last visited June 15, 2012) (23 of 27 Baltimore City law enforcement officers killed by firearm of known type involved handgun).

[11] References to "Cook" in the joint appendix refer to the expert witness testimony of Professor Philip J. Cook, a professor of public policy at Duke University who has been researching firearms violence since 1975. (J.A. 66-107.)

of firearms has a direct positive effect on the lethality of crimes. (J.A. 70-75 (Cook).) The requirement also reduces interference with the ability of law enforcement officers to protect public safety, and reduces interference with interdiction efforts that aim to stop criminal activity before it has a chance to develop. (J.A. 76-77 (Cook); 113 (Bealefeld); 121 (Sheridan); 131-32 (Johnson).)

Additionally, in the absence of a good-and-substantial-reason requirement, Maryland would likely be required to issue permits to individuals who will use their handguns to commit crimes. Although the primary factor used to disqualify individuals from receiving a permit in "shall-issue" jurisdictions is whether they have a past felony conviction, studies have found that fewer than half of adults arrested for criminal homicide have prior felony convictions. (J.A. 78-79 (Cook).) The presence or absence of prior felony convictions therefore does not reliably predict who is likely to use a handgun for criminal activity, making that factor inadequate, on its own, for effective permitting. (J.A. 128 (Johnson).) Indeed, one group that has tracked public reports of killings committed by handgun permit holders since May 2007 has identified 448 people killed by holders of concealed carry permits/licenses, including 276 non-suicide, intentional killings. *See* Violence Policy Center, Total People Killed by Concealed Handgun Permit Holders (2012), *available at* http://www.vpc.org/fact_sht/ccwtotalkilled.pdf (last visited July 25, 2012).

### 3. Other Courts Have Upheld Similar, and More Restrictive, Permit Statutes Under Intermediate Scrutiny.

In the wake of the Supreme Court's decisions in *Heller* and *McDonald*, several lawsuits have been brought challenging handgun permit statutes. Although none of these challenges have yet been decided by federal appellate courts, with the sole exception of the court below, federal district courts have uniformly upheld the constitutionality of handgun permit statutes that are similar to, and in some cases stricter than, Maryland's. *See, e.g.*, *Kachalsky*, 817 F. Supp. 2d at 240 (upholding New York requirement that an applicant for a concealed carry permit demonstrate that "proper cause exists for the issuance" of the permit); *Piszczatoski*, 2012 U.S. Dist. LEXIS 4293, at *2 (rejecting challenge to New Jersey law requiring a permit applicant to demonstrate a "justifiable need to carry a handgun"); *Kuck v. Danaher*, 822 F. Supp. 2d 109, 120, 129-30 (D. Conn. 2011) (upholding, on intermediate scrutiny analysis, Connecticut law requiring a handgun carry permit applicant to demonstrate he intends to use the handgun for a lawful purpose and is a "suitable person" to receive such a permit); *Hightower v. City of Boston*, 822 F. Supp. 2d 38, 44, 61-65 (D. Mass. 2011) (rejecting as unripe a challenge to Massachusetts law requiring a firearm carry permit applicant to demonstrate he is "a suitable person to be issued such license," but adding, in dicta, that the challenged law would survive intermediate scrutiny).

With the lone exception of the court below, no federal court after *Heller* has invalidated a handgun wear-and-carry permit statute. The district court improperly applied the intermediate scrutiny test by effectively demanding a perfect fit, not a reasonable fit, between the good-and-substantial-reason requirement and the State's compelling interests. In fact, the Permit Statute is a reasonable fit because it is properly targeted at conduct that adversely impacts public safety in Maryland; it does not burden in any way the core conduct protected by the Second Amendment; and to the extent it could be claimed to burden conduct protected by the Second Amendment at all, it does so in a limited way by permitting the wear and carry of handguns in connection with numerous specified activities, providing permits to individuals who identify a good and substantial reason to wear and carry a loaded handgun in public, and not restricting the carry of firearms other than handguns. If the Permit Statute is not a *perfect* fit for the State's public safety concerns, it is certainly a *reasonable* one.

For all of these reasons, Defendants have a substantial likelihood of prevailing on the merits.

## III. THE LIKELIHOOD OF IRREPARABLE HARM IN THE ABSENCE OF A STAY FAVORS GRANTING A STAY.

The second factor the Court must consider is the likelihood Defendants "will suffer irreparable injury if the stay is denied." *Long*, 432 F.2d at 979. In this case,

Defendants will suffer irreparable injury in at least two ways. First, and most importantly, Defendants will be precluded from using the good-and-substantial-reason requirement to protect public safety. As discussed above, and as the district court recognized, protecting public safety and preventing crime are compelling government interests. It was to advance these critical public interests, particularly as they pertain to handgun violence, that the Maryland General Assembly enacted the Permit Statute 40 years ago, and the testimony of Maryland law enforcement officials demonstrates the ongoing importance of the good-and-substantial-reason requirement to public safety (J.A. 108, 115, 126). Without the ability to enforce the good-and-substantial-reason requirement, Defendants and other State officials will lose an important tool to protect the people of Maryland against devastating handgun violence. *See* discussion above at 20-22.[12]

---

[12] Although the district court discounted the social science evidence as inconclusive (Supp. App. 467-68): (1) the most recent and comprehensive social science study has concluded that the best available data supports the conclusion that so-called "shall issue" gun permit laws increase certain crime rates and do not decrease any crime rates, *see, e.g.*, (Supp. App. 297-365); Brief of the American Public Health Association and American College of Preventive Medicine as *Amici Curiae* in Support of Appellants and Reversal (Doc No. 25-1) at 10; (2) studies that have concluded that "shall issue" gun permit laws reduce crime have been thoroughly discredited, *id.* at 8-10; and (3) the fact that the state of the science has not yet evolved to produce a scientifically-conclusive answer on the impact of specific gun regulations does not undermine the conclusions of the Maryland General Assembly and Maryland law enforcement officials that the good-and-substantial-reason requirement is important to public safety in Maryland, *see Gonzales v. Carhart*, 550 U.S. 124, 163 (2007) (explaining, in context of conflicting medical evidence pertaining to abortion regulation, that the "Court has

This Court and others have recognized that the harm resulting from miscalculations as to the scope of the Second Amendment right is irreparable in the most complete sense imaginable. In *Masciandaro*, this Court cautioned that such a miscalculation could result in "some unspeakably tragic act of mayhem," and noted that this danger might "rise exponentially as one moved the right from the home to the public square," 638 F.3d at 475; *see also Piszczatoski*, 840 F. Supp. 2d 813, 2012 U.S. Dist. LEXIS 4293, at *3 (an individual empowered to use a firearm can "cause serious personal injury—including the ultimate injury, death—to other individuals, rightly or wrongly.").

Second, Defendants will suffer irreparable harm in the absence of a stay because "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). "[S]tatutes are presumptively constitutional and, absent compelling equities on the other side . . . should remain in effect pending a final decision on the merits by this Court." *Id.* at 1352. These principles are

---

given state and federal legislatures wide discretion to pass legislation in areas where there is medical and scientific uncertainty"); *Kansas v. Hendricks*, 521 U.S. 346, 360, n. 3 (1997) (noting, in response to conflicting scientific evidence pertaining to state's civil commitment statute, that "when a legislature undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad" (internal quotation marks omitted)).

especially applicable to a longstanding law enacted 40 years ago pursuant to the State's police power for the purpose of protecting public safety.

Moreover, failure to grant a stay will impose significant and immediate administrative burdens on the State and on individuals who would qualify for a Permit under current law.[13] MSP resources for processing permits are already strained, and would become much more so if a large number of new permit applications need to be processed, leading to potential delays that would particularly affect those who, under existing law, have a demonstrable reason to wear and carry a handgun in public. (Supp. App. 235-36). Moreover, if a stay is not entered and Defendants ultimately prevail, MSP would be obligated to revoke the permits of all individuals who decline to, or who cannot, provide evidence of a good and substantial reason during the pendency of the appeal. (Supp. App. 231.) Although MSP would attempt to lessen the harmful impact of this scenario, it will inevitably result in a significant administrative burden and delays. (Supp. App. 231-35.)

The likelihood of irreparable harm to Defendants in the absence of a stay favors granting a stay.

---

[13] Especially in the current economic climate, with every additional expense requiring the diversion of resources from other programs, the district court erred in failing to give weight to the financial and administrative costs of substantially overhauling a regulatory program during the pendency of this appeal.

**IV. CONSIDERATION OF POTENTIAL INJURY TO OTHER PARTIES FAVORS GRANTING A STAY.**

In contrast to the irreparable harm to the State's ability to protect public safety, as well as the harm from prohibiting the enforcement of a longstanding state statute duly enacted by the General Assembly, any harm to Plaintiffs from granting a stay will be minimal. Maryland's good-and-substantial-reason requirement does not in any way burden the core Second Amendment right identified by the Supreme Court in *Heller* of law-abiding, responsible individuals to wear and carry a weapon for self-defense in the home. Nor does Maryland's good-and-substantial-reason requirement burden any individual's possession, wear, or carry of a handgun, if otherwise permitted by law, in connection with hunting, organized military activity, target shoots, formal or informal target practice, a sport shooting event, or trapping, among other activities. CL § 4-203(b). Nor does Maryland's good-and-substantial-reason requirement burden any individual's wear and carry of long guns. Thus, staying the district court's injunction pending appeal would neither interfere with a core constitutional right nor prevent citizens from keeping and bearing handguns for self-defense inside the home or other types of firearms for self-defense outside the home.

The equities, therefore, involve Plaintiffs' desire to wear and carry, in public, a particular type of loaded firearm—which is the type of firearm most frequently used in criminal activity, *see* discussion above at 20-21—against the

State's significant interest in protecting its citizens from harm flowing from the public carry of that particular weapon by individuals without good and substantial reason to do so. For the duration of this appeal, that balance tilts in favor of a stay.

## V.     THE PUBLIC INTEREST FAVORS GRANTING A STAY.

The public interest strongly favors granting a stay. As discussed above, public safety and preventing crime are compelling government interests, and the record in this case, including the testimony of law enforcement officers and social science evidence, confirms that the good-and-substantial-reason requirement advances those interests.

Furthermore, the issues presented by this case are presented against a rapidly-evolving legal framework as to which the Supreme Court left very little guidance. Lower courts around the country have been attempting to predict the approach the Supreme Court is most likely to take in resolving questions with serious implications for both public safety and the individual Second Amendment right identified by the Supreme Court four years ago in *Heller*. Indeed, cases challenging handgun wear-and-carry permit statutes are currently pending in at least four other federal appellate courts. In light of the substantial uncertainty surrounding this area of law, the public interest is best served by preserving the status quo until this Court has the opportunity to determine, as a matter of first impression, the significant constitutional issues presented.

Even if the district court's injunction were ultimately to be affirmed by this Court, the public interest would also support a stay that would provide the Maryland General Assembly the opportunity to consider any changes to Maryland law that might help mitigate the adverse public safety impact of the invalidation of the good-and-substantial-reason requirement. Such an opportunity is necessary to at least partially alleviate the circumscription of "the scope of popular governance" accomplished by the district court's orders. *See Masciandaro*, 638 F.3d at 475.

## CONCLUSION

The Court should grant a stay of the district court's March 5, 2012 and April 2, 2012 orders pending the outcome of this appeal.

DOUGLAS F. GANSLER
Attorney General of Maryland

DAN FRIEDMAN                          /s Matthew J. Fader
Assistant Attorney General           MATTHEW J. FADER
Office of the Attorney General       STEPHEN M. RUCKMAN
Legislative Services Building        Assistant Attorneys General
90 State Circle                      200 St. Paul Place, 20th Floor
Annapolis, Maryland 21401            Baltimore, Maryland 21202
Tel. 410-946-5600                    Tel. 410-576-7906

July 27, 2012                        Attorneys for Defendants-Appellants

**CERTIFICATE OF SERVICE**

I certify that, on this 27th day of July 2012, I electronically filed with the Clerk of the Court via the CM/ECF System the foregoing Motion For Stay Pending Appeal.

/s Matthew J. Fader
Matthew J. Fader